**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SYED AHMAD, and
LETICIA AHMAD                                           Case No. 11-15204

        Plaintiffs,                                Hon. Sean F. Cox
                                                      Magistrate Judge Laurie J. Michelson

v.

WELLS FARGO BANK, NA, AS TRUSTEE,
BANK OF AMERICA, NA, AS SUCCESSOR
BY MERGER TO BAC HOME LOANS
SERVICING, L.P., and HOME LOAN
SERVICES, INC. (f/k/a FIRST FRANKLIN
FINANCIAL CORPORATION)

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION TO DISMISS [5]**

Plaintiffs brought this lawsuit seeking to "quiet title" on their residence following a default on their mortgage and subsequent foreclosure, sheriff's sale, and expiration of the statutory redemption period. Plaintiffs' Complaint alleges the following claims against Defendant Wells Fargo Bank, NA as Trustee for First Franklin Mortgage Loan Trust 2006-FFH1 Asset-Backed Certificates, Series 2006-FFH1 ("Defendant" or "Wells Fargo"), and Bank of America, N.A. as successor by merger to both of the mortgage's servicers, Home Loans Services, Inc. and BAC Home Loans Servicing, LP ("BANA" or "Servicer"):

        Count I – Violation of foreclosure by advertisement

        Count II – Negligence

        Count III – Third-Party Beneficiary Breach of Contract

        Count IV – Equitable Estoppel

(Dkt. 1, Compl.)

Defendants filed a Motion to Dismiss arguing that Plaintiffs lack standing to challenge the mortgage foreclosure because the redemption period has expired and Plaintiffs' claims fail on the merits or are otherwise barred. (Dkt. 5, Mot. Dismiss.) The Motion was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 6.) The Motion is fully briefed and the Court heard oral argument on February 15, 2012. For the reasons that follow, this Court RECOMMENDS that the Motion be GRANTED.

**I.      INTRODUCTION**

On December 22, 2005, Plaintiffs Syed and Leticia Ahmad ("Plaintiffs") obtained a $405,000 mortgage loan from First Franklin on their residence in Dearborn, Michigan ("Property"). (Dkt. 1, Ex. A., Compl., ¶ 9.) The Mortgage expressly provides that "Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender [First Franklin] and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale," the Property. (*Id*. at Ex. 1, Pg ID 25.) The Mortgage also defines MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." (*Id.* at Pg ID 24.) On September 22, 2009, the mortgage was assigned by MERS to Wells Fargo. (*Id*. at ¶ 11, Ex. 2.) In October 2010, the servicing rights to the mortgage were transferred from First Franklin to BANA as successor by merger to Home Loan Services. (Compl., ¶¶ 3, 4, 10.)[1]

---

[1] Defendants explain that "the term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605. "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments

Drawing all inferences in favor of Plaintiffs, it appears that they had applied for two loan modifications prior to and during the foreclosure proceedings. In early 2009, Plaintiffs applied for a loan modification under the federal Homes Affordable Modification Program ("HAMP"). (*Id.*, ¶ 20.) But on September 23, 2009, Wells Fargo's representative, Trott and Trott P.C., sent Plaintiffs a notice of default, as required under Michigan Foreclosure Statute, Mich. Comp. Laws §600.3205a, advising them that "[w]ithin 14 days of the date of this notice, you may request a meeting with the agent designated above to attempt to work out a modification of the mortgage loan to avoid foreclosure by contacting a housing counselor from the list provided with this notice." (Mot. Dismiss, Ex. B.) At this mediation meeting with a representative of the loan servicer (which Defendants contend occurred on October 26, 2009) Plaintiffs were advised that their loan modification application was denied. (Compl., ¶ 22.)[2] Plaintiffs explained the denial was improper because the loan servicer failed to consider as income the unemployment insurance payments that Mrs. Ahmad was receiving. (*Id.*) Plaintiffs allege that during the meeting they were instructed to send in another HAMP loan modification application with supporting financial documents. (*Id.*)

On January 29, 2010, Trott and Trott sent a letter to Plaintiffs advising that, based on the financial information provided, they were ineligible for a loan modification and, as a result, foreclosure proceedings would continue as allowed by Michigan law. (*Id.*, ¶22; Mot. Dismiss, Ex. D.) A notice of foreclosure was published in February, 2010. (Compl., Ex. 4.) Plaintiffs contend,

---

with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id. see also* (Mot. Dismiss at Pg ID 83, n.1).

[2] During the hearing, Plaintiffs' counsel acknowledged that some of the dates in the Complaint regarding the background events may be a little off and that he was not disputing Defendants' contention that the mediation meeting took place on October 26, 2009. By implication, a default occurred prior to the meaning.

3

however, that this did not affect the HAMP application review process that was still under review in February 2010. (Pl. Resp., Pg ID 220.)[3] Thus, Plaintiffs allege they were "alarmed" when they received a notice in early February 2010 that foreclosure had commenced on their home, as they believed their HAMP loan modification request was still in review or mediation. (*Id*.; Compl., ¶25.) They contend that during a phone call with First Franklin, a representative advised that the commencement of foreclosure was a mistake, they should disregard the foreclosure notice and the Servicer would contact their attorneys to "take care of it." (Compl., ¶26.) In October 2010, Plaintiffs called Defendant First Franklin to inquire about the HAMP modification review and were told their loan had been transferred to Bank of America. They claim that it was then that they first learned that a sheriff's sale had already occurred six (6) months earlier on April 15, 2010. (*Id*., ¶27.) Plaintiffs allege that, as of October 2010 when the statutory redemption period expired, they never received a denial of their HAMP loan modification application. (*Id*., ¶ 32.)

Plaintiffs continued their attempts to acquire a loan modification until January 2011 when BANA suggested that Plaintiffs needed to make a lump sum payment of $50,000 in order to qualify. (*Id*., ¶31) Plaintiffs allege they could not afford to make such a payment and, in any event, it violated the requirements of the HAMP program. (*Id*.)

Plaintiffs filed this lawsuit on October 17, 2011 seeking to set aside the foreclosure sale. Following the Michigan Supreme Court's ruling in *Residential Funding Co. LLC v. Saurman,* __ N.W.2d __, 2011 WL 5588929 (Mich. Nov.16, 2011) (*"Saurman II"*) – issued shortly after

---

[3] More specifically, Plaintiffs allege that they submitted two applications for loan modification. They were advised at the mediation meeting (and then presumably by follow-up letter) that the first application was rejected but were given the opportunity to submit another application. [*Id*., ¶¶ 23-24.] The essence of Plaintiffs' allegations is that this second application was not properly evaluated or rejected.

4

Plaintiffs filed their Complaint – Plaintiffs no longer maintain that Defendants violated the Michigan foreclosure by advertisement statute (Count I). (Pl. Resp., Pg ID 224.) Plaintiffs still maintain, however, that Defendants' conduct in dealing with their request for a HAMP loan modification constitutes negligence (Count II), breach of contract (Count III), and equitable estoppel (Count IV). Defendants contend that these remaining counts should be dismissed because once the mortgage foreclosure was completed and the redemption period expired, Plaintiffs lack standing to make claims with respect to the property. Defendants also contend that Plaintiffs cannot avoid the prohibition on private rights of action under HAMP by disguising their claims as violations of state law.

## II.  ANALYSIS

### A.  Standard of Review

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, and (3) public documents. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007); *Amini* v. *Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001). The court's consideration of these document does not require conversion of the motion to one for summary judgment. *Greenberg* v. *Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir. 1999). Here, the Court has considered documents relating to the mortgage and the foreclosure which are referenced in the Complaint and central to Plaintiffs' claims.

### B. Although the Court Need Not Decide the Issue, Defendants Have Not Shown that Plaintiffs Lack Standing To Bring An Action To Quiet Title

Plaintiffs "are challenging Defendants' claims to title (obtained through an improper foreclosure sale)." (Pl. Resp., Pg ID 224.) Defendants contend that "it is well-settled in Michigan that when a redemption period expires after a foreclosure sale, a former property owner loses all right, title and interest in the property," and thus, Plaintiffs lost standing to challenge the foreclosure sale after the expiration of the redemption period on October 15, 2010, when all right, title, and interest vested in Wells Fargo – the holder of the sheriff's deed. (Mot. Dismiss, Pg. ID 86.). In support, Defendants rely on the following authority: *Piotrowski v. State Land Office Bd.,* 302 Mich. 179, 187, 4 N.W.2d 514 (1942) (holding that "plaintiffs did not avail themselves of their right of redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and to the property were extinguished."); *Overton v. Mortgage Electronic Registration Sys., Inc.,* No. 284950, 2009 Mich. App. LEXIS 1209 (Mich. Ct. App. May 28, 2009) (holding that the

6

plaintiff's filing of his lawsuit did not toll the redemption period and once that period expired, the plaintiff lacked standing to challenge the foreclosure proceedings).

Defendants further point out that many courts in this District, applying this Michigan law, have found that, absent a clear showing of "fraud, irregularity or some peculiar exigency," *United States* v. *Garno*, 974 F.Supp. 628, 633 (E.D. Mich. 1997), plaintiff-borrowers lack standing to challenge a foreclosure sale after the passing of the redemption period. *See, e.g., Golden v. United States Bank Nat'l Ass'n*, No. 11-CV-13227, 2012 U.S. Dist. LEXIS 11638, at *13 (E.D. Mich. Jan. 31, 2012) (finding that plaintiffs had no standing to raise any claims regarding the mortgage at issue because "In Michigan, once the redemption period following foreclosure of a parcel real property has expired, the former owners' rights in and title to the property are extinguished."); *Nafso v. Wells Fargo Bank, N.A.*, No. 11-10478, 2011 U.S. Dist. LEXIS 44654, at *5-7 (E.D. Mich. Apr. 26, 2011) (dismissing plaintiffs' quiet title claim based on defects in the foreclosure proceedings because plaintiff lost standing to assert any rights to or interest in the property when the redemption period expired) (citing cases); *Moriarty v. BNC Mortgage, Inc.*, No. 10-13860, 2010 U.S. Dist. LEXIS 132576 (E.D. Mich. Dec. 10, 2010) (finding that after the redemption period expired, plaintiff lacked standing to challenge the foreclosure/sheriff's sale).

However, in *Rainey v. United States Bank Nat'l Ass'n*, No. 11-12520, 2011 U.S. Dist. LEXIS 123347 (E.D. Mich. Oct. 25, 2011), the court expressed a contrary view:

> The defendants, relying on *Overton v. Mortgage Elec. Registration Sys. & Citimortgage,* No. 284950, 2009 Mich. App. LEXIS 1209, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009), argue that the plaintiffs do not have standing because they no longer retain a legal interest in the subject property because the redemption period has expired. There is no merit to that argument. First, the defendants' argument relies on an incorrect notion of standing. District Judge Robert Jonker, in *Langley v. Chase Home Finance LLC*, No. 10-604,

7

2011 U.S. Dist. LEXIS 32845, 2011 WL 1130926, at *2 n.2 (W.D. Mich. Mar. 28, 2011), aptly explained the defendants' mistake:

> Many Defendants suggest the basis for the ruling in *Overton* is a lack of Plaintiff's standing once the redemption period expires, but the Court of Appeals does not actually say this. Nor would it seem like Article III standing could possibly be in doubt. After all, the Plaintiffs in such cases are the last lawful owner and possessor of the property. Moreover, they often remain in continuing possession of the property notwithstanding any Sheriff's sale and expiration of a redemption period. Moreover, Plaintiffs in such cases claim a continuing right to lawful ownership and possession based on defects in the process used by Defendants to divest them of those rights. This certainly seems to satisfy the basic Article III requirement of "injury in fact," as well as any prudential considerations tied to a "zone of interests" analysis. Indeed, it is hard to imagine a person with a better claim to standing to challenge the process at issue. Of course, having standing to bring a claim does not mean you have a valid claim on the merits. That is a different question. *Overton* is best viewed as a merits decision, not a standing case.

*Langley,* 2011 U.S. Dist. LEXIS 32845, 2011 WL 1130926, at *2 n.2.

Second, "[t]he [Michigan] Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceeding." *Manufacturers Hanover Mortgage Corp. v. Snell*, 142 Mich. App. 548, 553, 370 N.W.2d 401, 404 (1985) (citing *Reid v. Rylander,* 270 Mich. 263, 267, 258 N.W. 630 (1935); *Gage v. Sanborn,* 106 Mich. 269, 279, 64 N.W. 32 (1895)). "Otherwise, the typical mortgagor who faces an invalid foreclosure would be without remedy, being without the financial means to pursue the alternate course of filing an independent action to restrain or set aside the sale." *Ibid.* (citing *Reid,* 270 Mich. at 267, 258 N.W. 630; 16 Michigan Law and Practice, Mortgages, § 174, pp. 438-39).

The defendants' standing argument must be rejected. The plaintiffs allege continuing ownership of the Property, Compl. ¶ 7, and satisfy the constitutional and prudential standing requirements. There is no

question that the plaintiffs have standing to bring their claims.

*Id.* at *6-8.

Plaintiffs here likewise rely on *Mfr. Hanover Mortgage Corp. v. Snell*, 142 Mich. App. 548, 370 N.W.2d 401(Mich. Ct. App. 1985). (Pl.'s Resp. Br., Pg ID 223.) Defendants counter that *Snell* is inapplicable because "plaintiffs are not testing the validity of the foreclosure sale in a summary proceeding. Rather, plaintiffs chose to file an independent action." (Def.'s Rpy, Pg ID 329.) This distinction is strained. The Court sees no reason why Plaintiffs should have standing to challenge the foreclosure if Defendants had initiated eviction proceedings against them, but not if they decide to act first and bring their own lawsuit. Stated differently, given that Michigan law does not divest a mortgagor of the right to raise procedural defects in the foreclosure process in a summary eviction proceeding — a proceeding that necessarily occurs after the statutory redemption period, *see* Mich. Comp. Laws § 600.5714(1)(f) — it follows that it should not deprive a mortgagor of standing if she takes the role of plaintiff and asserts claims based on the very same defects. *See Reid v. Nusholtz*, 264 Mich. 220, 224, 249 N.W. 831, 832 (1933) ("There were three methods of procedure available to defendants after foreclosure. . . . They could file a bill and have the sale set aside, or, *which was equivalent thereto*, hold over after redemption had expired and test the validity of the sale in the summary proceedings." (emphasis added)).

Ultimately, however, the Court does not need to resolve Plaintiffs' standing to seek to quiet title in their residence based on alleged deficiencies in the HAMP loan modification review process because, even assuming they have such standing, their claims are still subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

### C. **Plaintiffs' Contract And Tort Counts Fail To State A Claim**

9

Defendants' primary contention is that Plaintiffs may not establish liability by relying on Defendants' alleged violations of certain servicing guidelines promulgated by the U.S. Department of the Treasury in connection with the Home Affordable Modification Program ("HAMP") because there is no private cause of action under HAMP. *See Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010).

HAMP was created by Congress under the authority of the Emergency Economic Stabilization Act of 2008, Pub. L. 110-343. Pursuant to this program, various mortgage loan servicers (such as BANA) entered into Servicer Participation Agreements ("SPA") that require the servicer to perform certain loan modification and foreclosure prevention services described in the agreement and in program guidelines and procedures issued by the Department of the Treasury. *See Escobedo v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 117017, 2009 WL 4981618, at *1 (S.D. Cal. 2009); (Compl. ¶¶ 42-45). Among other things, participating servicers are required to consider all loans eligible under the program, but are not required to modify mortgages. *See id; see also Zoher v. Chase Home Fin.*, No. 10- 14135, 2010 U.S. Dist. LEXIS 109936 (S.D. Fla. Oct. 14, 2010) (explaining that HAMP is a program created by the Department of Treasury and the Federal Housing Finance Agency, which offers financial incentives to mortgage lenders who modify the home loans of borrowers in danger of foreclosure. Mortgage lenders or servicers enter servicer participation agreements with the government agreeing to abide by a set of guidelines in evaluating applications for home mortgage modification.").

Plaintiffs in foreclosure cases have taken several routes to challenging the foreclosures and sheriff's sales where HAMP loan modifications were not obtained: claiming a private right to sue under HAMP, claiming breach of contract as a third-party beneficiary and claiming other contract

and tort violations. Plaintiffs' legal theories either track the paradigmatic HAMP claims or dress them up in slightly different terms. Either way, the claims fail.

### 1. Negligence (Count II)

Defendants urge the Court to dismiss Plaintiffs' negligence count as a disguised attempt to manufacture a private right of action under HAMP. Plaintiffs respond that they are not bringing a claim directly under HAMP. The essence of their claim is that Defendants had a duty to refrain from foreclosing on Plaintiffs' property while Plaintiffs were under consideration for a HAMP modification and by foreclosing in disregard of this duty, Defendants were negligent. More specifically, Plaintiffs allege that "the breached duty is not a duty to modify Plaintiffs' loan, but a duty, in general terms, to exercise reasonable care in protecting this limited class of homeowners against unnecessary foreclosure, the standard for which is evidenced by HAMP Regulations." (Pls.' Resp. at Pg ID 225.); *see also* Pl. Resp. at Pg ID 228 ("Servicer's SPA further states that the 'primary purpose' of HAMP was 'the modification of first lien mortgage loan obligations and the provision of loan modification and foreclosure prevention services relating thereto.' The fact that the claimed duty in this case, when violated, has the opposite result of this primary policy goal by causing the unnecessary loss of homeownership strongly supports the existence of a duty.") (citations omitted).

The elements of a negligence claim are "duty, breach of that duty, causation, and damages." *Brown v. Brown*, 478 Mich. 545, 552, 739 N.W.2d 313, 316-17 (2007). Duty is "the legal obligation to conform to a specific standard of conduct in order to protect others from unreasonable risks of injury." *Lelito v. Monroe*, 273 Mich. App. 416, 419, 729 N.W.2d 564, 566 (2006).

Plaintiffs rely on *Speleos v. BAC Home Loans Servicing, LP,* 755 F. Supp. 2d 304, 311 (D.

Mass. 2010) for the proposition that "a violation of the HAMP Guidelines may constitute evidence of breach of duty." Several other courts, however, have rejected this argument. Indeed, in declining to follow *Speleos,* another Massachusetts court explained:

> Plaintiffs seize on this latter provision [of the Helping Families Save Their Homes Act] and insist that it establishes a legal duty of care for servicers to comply with HAMP guidelines, or else face lawsuits sounding in state tort law. This argument is without merit. While the statute evinces an intent to encourage servicers to modify loans under HAMP, it likewise aims to protect servicers from liability for participating in HAMP and other loss-mitigation initiatives. Far from establishing a new duty of care that would cast a wider net of liability under state-law negligence claims, the statute removes a legal barrier to more widespread loan modification activity so as to encourage servicers to participate in HAMP and related programs. *Accord Jones v. Premier One Funding, Inc.*, 2010 U.S. Dist. LEXIS 21715, 2010 WL 841277, *3 (N.D. Cal. Mar. 10, 2010).
>
> Plaintiffs do not cite to any Massachusetts authority recognizing a duty of care set by HAMP guidelines, the breach of which would expose servicers to liability. It is true, as plaintiffs point out, that under Massachusetts law a statutory or regulatory violation can supply evidence of negligence. [citations omitted.] But, as another court in this district recently explained, "while [the] violation of [HAMP guidelines] may provide evidence of a duty *otherwise owed*, it does not create such a duty in the first place." *Brown v. Bank of America Corp.,* 2011 U.S. Dist. LEXIS 36235, 2011 WL 1311278, *4 (D. Mass. Mar. 31, 2011); *but see Speleos,* 755 F. Supp. 2d at 311 (finding that the HAMP guidelines may establish a duty of care, the breach of which may state a negligence claim).
>
> The Court will decline the invitation to recognize in the HAMP guidelines a new duty of care, thus far unrecognized by Massachusetts courts. To find a legal duty within the Helping Families Save Their Homes Act – a duty that would expose mortgage servicers to expanded liability under HAMP – would not accord with Congress's intent. Count 3 will therefore be dismissed.

*Markle v. HSBC Mortgage Corp.,* No. 10-40189, 2011 U.S. Dist. LEXIS 147349, *29-31 (D. Mass. July 12, 2011); *see also Moore v. MERS*, No. 10-241, 2012 U.S. Dist. LEXIS 9713, *60 (D.N.H. Jan. 27, 2012) (finding that plaintiffs may not premise a negligence claim upon an alleged breach

of the HAMP SPAs); *Correll v. Bank of Am., N.A.*, No. 2:11cv477, 2012 U.S. Dist. LEXIS 12960 (E.D.Va. Feb. 12, 2012) (dismissing plaintiff's negligence claim based on allegations that defendant mortgage servicer willfully mishandled plaintiff's loan modification because plaintiff's theory highlighting the purposes and policies behind HAMP failed to show any duty owed by the servicer); *Costigan v. Citimortgage, Inc.*, No. 10-8776, 2011 U.S. Dist. LEXIS 84860 (S.D.N.Y. Aug. 1, 2011) (dismissing plaintiff's negligence claim that alleged defendant owed its borrowers "a duty of reasonable care in the processing and determination of the loan modification applications and the processing of their foreclosures" and breached this duty by failing to properly evaluate plaintiff's loan modification application because, "*First* . . . the SPA and the other terms of HAMP do not impose a duty on [defendant] with respect to borrowers. *Second*, it is well-established that 'a bank does not owe a duty of care to a borrower, even if the borrower is a consumer.'"); *Hernandez v. Aurora Loan Servs., LLC,* No. 11-00607, 2012 U.S. Dist. LEXIS 143066, \*22 (C.D. Cal., Dec. 13, 2011) (dismissing negligence claim where the court was unable to find any case law supporting the proposition that HAMP creates a duty of care on behalf of the lender to the borrower).

Similarly here, Plaintiffs have not identified any Michigan case holding that HAMP imposes a duty on a participating servicer for which borrowers, like Plaintiffs, could seek relief. Indeed, as District Judge Avern Cohn explained in another case involving a challenge to a foreclosure by advertisement by Wells Fargo:

> The Michigan Supreme Court has held that in "tort actions based on a contract," courts should use a "'separate and distinct mode of analysis." *Fultz,* 470 Mich. at 467. Specifically, the Court held: "[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Id* . . . .
>
> Here, plaintiff has not alleged that defendants owed him a duty that

13

> is separate and distinct from their contractual obligations. Plaintiff's allegations relate to defendants' duties that arise, if at all, based on the note and mortgage. For example, plaintiff alleges that "The Defendant, as Mortgage Servicer, owes the Plaintiff, as Borrower, a duty to comply with relevant industry standards for the lending industry, as well as compliance with local, state and federal regulations." Complaint at ¶ 64. However, no such duty exists. *See, e.g.*, *Ulrich v. Federal Land Bank of St. Paul,* 192 Mich. App. 194, 198- 199, 480 N.W.2d 910; 192 Mich. App. 194, 480 N.W.2d 910 (1991) (holding that a lending institution did not owe a borrower a duty of care with respect to determining the borrower's eligibility for the loan). Because plaintiff has not alleged the existence of a separate and distinct legal duty that would give rise to a negligence claim, plaintiff's negligence claim . . . must be dismissed.

*Galati*, 2011 U.S. Dist. LEXIS 126124 at *22-23.

Additionally, because of the overwhelming case law finding that plaintiffs do not have a private right of action to sue for a violation of HAMP – e.g., *Nafso v. Wells Fargo Bank, NA*, No. 11-10478, 2011 U.S. Dist. LEXIS 44654, *10 (E.D. Mich. Apr. 26, 2011) – courts should be reluctant to allow plaintiffs to recast these claims – involving alleged failures to conform to the provisions of HAMP – as tort violations.

Accordingly, for all of these reasons, the Court recommends that Plaintiffs' negligence claim be dismissed.

### 2. *Third Party Beneficiary Breach of Contract (Count III)*

With respect to Count III of their Complaint, Plaintiffs again explain that they "are not alleging a private cause of action under HAMP . . . but instead argue that Defendant Servicer has breached its contractual obligation to fully evaluate Plaintiffs for a loan modification under HAMP prior to commencing foreclosure or proceeding with a Sheriff's Sale." (Pl. Resp., Pg ID 233.) Plaintiffs contend that they have the right to enforce the SPA as third-party beneficiaries under Michigan law because homeowners at risk of foreclosure are the primary beneficiaries of the SPAs

– which provide avenues for these homeowners to preserve their ownership. (*Id*. at 234.)

To sue as a third party beneficiary, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. *Escobedo v. Countrywide Home Loans, Inc.,* No. 09-1557, 2009 U.S. Dist. LEXIS 117017, * 4-5 (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210-11 (9th Cir. 2000)). The *Escobedo* court further explained:

> Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary. Furthermore, a qualified borrower to a HAMP agreement "would not be reasonable in relying on the Agreement as manifesting an intention to confer a right on him because the Agreement does not require [a servicer] to modify eligible loans." Therefore, "qualified borrowers are incidental beneficiaries of the Agreement and do not have enforceable rights under the contract. Thus, a Plaintiff lacks standing to sue for an alleged breach of the Agreement."

*Id*. at * 5-6 (citations omitted).

Plaintiffs, however, rely on *Marques* v. *Wells Fargo Home Mortgage Inc.,* No. 09-1985, 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010) which held that borrowers may bring a third-party beneficiary breach of contract claim against a mortgage servicer. But "[m]ost every case that has cited *Marques* since has disagreed with it." *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. 10-3517, 2011 U.S. Dist. LEXIS 87495, at *46, n.20 (D. Md. Aug. 8, 2011); *see also Nafso v. Wells Fargo Bank, NA*, No. 11-10478, 2011 U.S. Dist. LEXIS 44654, at *12 (E.D. Mich. Apr. 26, 2011) ("The holding in *Marques* has been rejected by several courts.") (citing cases). As the *Nafso* Court held:

> This Court too declines to follow *Marques*. Federal law controls the interpretation of the HAMP contract. When a contract is entered into under federal law and one party is the United States, federal law

> applies. *County of Santa Clara v. Astra USA, Inc.,* 588 F.3d 1237, 1243 (9th Cir. 2009). Under federal common law, one way to distinguish between incidental and intended beneficiaries is whether "the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right" on the beneficiary. *Restatement (Second) of Contracts,* § 302. The requirement of clear intent "is not satisfied by a contract's recitation of interested constituencies, vague hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefits and was entered into with them in mind." *County of Santa Clara,* 588 F.3d at 1244-45. In the context of government contracts, such as HAMP, there is a presumption that any beneficiaries are only incidental beneficiaries. "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 1999). [Plaintiff] has not overcome the presumption that he is an incidental beneficiary of the contract between Wells Fargo and the government. Even though the contract does benefit homeowners such as [Plaintiff], the contract lacks the required clear intention. Other courts have concluded the same. *See Hofman v. Bank of America,* No. CV 10-2171, 2010 U.S. Dist. LEXIS 70455, 2010 WL 2635773 (N.D. Cal. June 30, 2010) ("[T]he existing case law weighs decisively in favor of defendant: numerous district courts have interpreted identical HAMP agreements and have come to the conclusion that a borrower is not [an intended] third party beneficiary.").

*Id*. at *12-14.

The determination that homeowners are not intended beneficiaries of the Servicer Participation Agreement comports with the conclusion reached by the vast majority of courts outside this District that have analyzed this third-party beneficiary claim. *See, e.g., Markle v. HSBC Mortgage Corp.,* No. 10-40189, 2011 U.S. Dist. LEXIS 147349, at *21-22 (D. Mass. July 12, 2011) (citing *Cade v. BAC Home Loan Serv., LP*, 2011 WL 2470733, at *2 n.2 (S.D. Tex. Jun. 20, 2011) (collecting cases in the HAMP context); *Edwards v. Aurora Loan Serv., LLC,* 791 F. Supp. 2d 144 (D.D.C. 2011) (same); *Hoffman v. Bank of America, N.A.,* 2010 WL 2635773, at *3 (N.D. Cal. Jun.

16

30, 2010) (same); *Acuna v. Chase Home Fin., LLC,* No. 10-905, 2011 U.S. Dist. LEXIS 52971, 2011 WL 1883089, at *4 (E.D.Va. May 17, 2011) (same).

Here, the SPA at issue does not express a clear intent to benefit Plaintiffs. It provides: "The Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest." (Pl. Resp., Ex. 1.) Thus, in accordance with the overwhelming majority of courts that have held borrowers are not third-party beneficiaries to the servicing contracts between lenders and the government, this Court recommends dismissal of Plaintiffs' third-party beneficiary breach of contract claim.

### 3. *Equitable Estoppel (Count IV)*

In their Complaint (and Response Brief), Plaintiffs allege that Defendants' negligence and breach of contract – i.e., going forward with the foreclosure and sheriff's sale despite the fact that Plaintiffs had not been properly evaluated for a HAMP modification – equitably estop Wells Fargo from obtaining title to the property. (Compl., ¶¶ 62-64.) Equitable estoppel requires proof of: (1) an act, representation, admission, or omission that intentionally or negligently induces another to believe certain facts exist, and (2) a reliance on those facts to the detriment of the second party if the first party were to be allowed to deny the existence of those facts. *Hart*, 735 F. Supp. 2d. at 746 (citing *Lichon v. Am. Universal Ins*, 435 Mich. 408, 415, 459 N.W.2d 288, 292 (1990)). For the reasons set forth above, these tort and contract claims cannot serve as the predicate for an equitable estoppel claim.

Plaintiffs also allege that First Franklin's oral representation to Plaintiffs that they should disregard their foreclosure notice in February 2010 because it was an error and would be "taken care of' by contacting their attorneys at Trott & Trott, P.C." equitably estopps Defendant Wells Fargo

17

from obtaining title to the property after the error went uncorrected and the sheriff's sale proceeded and redemption period expired without Plaintiffs knowledge. (Compl., ¶ 65.) This claim, however, is barred by the Michigan Statute of Frauds, Mich. Comp. Laws § 566.132. The Michigan statute of frauds precludes a party from "bringing a claim –no matter its label – against a financial institution to enforce the terms of an oral promise." *Crown Technology Park v. D&N Bank, FSB*, 242 Mich. App. 538, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000); *see also Jarbo v. BAC Home Loan Servicing,* No. 10-12632, 2010 U.S. Dist. LEXIS 132570, 2010 WL 5173825, at *11 (E.D. Mich. Dec. 15, 2010) (holding that the plain language of Michigan's statute of frauds precluded the plaintiffs from bringing claims alleging the breach of an unwritten promise to modify or delay repayment of their mortgage loans); *Williams v. JP Morgan Mortg. Acquisition Corp.,* No. 09-12106, 2010 U.S. Dist. LEXIS 25936, 2010 WL 1052356, at *4 (E.D. Mich. Mar. 19, 2010) (holding that the plaintiffs' claims based on the defendants' alleged promise that it would modify the loan on the plaintiffs' property and delay a foreclosure sale during the loan modification process were barred by § 566.132(2) because they had no writing, signed by the defendant, promising to modify the plaintiffs' loan or delay the foreclosure sale); *Ajami v. IndyMac Mortg. Servs.*, No. 09-13488, 2009 WL 3874680, at *2 (E.D. Mich. Nov. 13, 2009) (granting the bank's motion to dismiss the plaintiff's claims based on an alleged promise of a loan modification and short sale because they were barred by the statute of frauds).

In sum, neither Defendants' conduct nor any alleged oral promises by its representatives support an equitable estoppel claim and the Court recommends dismissal of this claim as well.

**III. CONCLUSION**

For the reasons set forth above, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED.

## IV. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES MAGISTRATE JUDGE

Dated: February 27, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 27, 2012.

s/Jane Johnson

Deputy Clerk
